Filed 7/7/26  P. v. Holdman CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>KEITH HOLDMAN,<br><br>    Defendant and Respondent. | F090325<br><br>(Super. Ct. No. DF018027B)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David E. Wolf, Judge.

Cynthia J. Zimmer, District Attorney, Anthony Yim, Deputy District Attorney, for Plaintiff and Appellant.

Allan E. Junker, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

The People appeal, contending that the sentence must be vacated and the matter remanded for further proceedings because the trial court abused its discretion pursuant to

---

[*]     Before DeSantos, Acting P. J., Harrell, J. and Guerra, J.

*Romero*[1] when it struck two of defendant Keith Holdman's three prior strike convictions. Defendant disagrees. We vacate the sentence and remand for the trial court to reconsider whether two of defendant's three prior strike convictions should be stricken pursuant to *Romero*. If, upon reconsideration, the trial court does not strike the prior strikes, defendant must be afforded the opportunity to withdraw from his guilty plea. In all other respects, we affirm the judgment.

## PROCEDURAL SUMMARY

On August 26, 2024, the Kern County District Attorney filed an information charging defendant with aggravated assault by an inmate with a deadly weapon (Pen. Code, § 4501, subd. (a);[2] count 1); and prisoner in possession of a weapon (§ 4502, subd. (a); count 2). As to both counts, it was further alleged that defendant suffered three prior strike convictions (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(e)) and three prior serious felony convictions (§ 667, subd. (a)(1)). The information also alleged multiple aggravating factors under the California Rules of Court, rule 4.421.[3]

On August 27, 2024, defendant pled not guilty to all counts and denied the allegations.

On January 28, 2025, the People offered defendant a negotiated plea agreement for 12 years of confinement. Defendant rejected the plea offer. The matter was continued.

On January 31, 2025, the trial court held a change of plea hearing. It gave an indicated sentence of eight years in state prison for defendant. The People objected to the court's indicated sentence. Defendant accepted the indicated sentence, pled no contest to all charges, and the court found defendant guilty of all charges.

---

[1]     *People v. Superior Court (Romero)* (1966) 13 Cal.4th 497 (*Romero*).

[2]     All further statutory references are to the Penal Code, unless otherwise noted.

[3]     All further rule references are to the California Rules of Court.

On March 19, 2025, the prosecution filed a sentencing brief and opposition to an anticipated *Romero* motion by defendant.

On May 19, 2025, the prosecution filed a supplemental sentencing brief.

On July 15, 2025, the trial court held a sentencing hearing. The prosecution objected to the court's indicated sentence and to striking defendant's prior strikes pursuant to *Romero*. The court exercised its discretion pursuant to *Romero* and struck two of defendant's three prior strike convictions. The court imposed a total term of eight years, as follows: on count 1, eight years (the midterm, doubled pursuant to the "Three Strikes" law). The punishment on count 2 was imposed and stayed pursuant to section 654.

On August 15, 2025, defendant filed a timely notice of appeal.[4]

## FACTUAL SUMMARY[5]

On January 26, 2023, defendant was an inmate at a correctional facility. He and D.B., also an inmate, attacked another inmate. Defendant stabbed the victim multiple times and struck him with his fists. Defendant later hid the weapon under the door of a cell. While D.B. also participated in the attack, only defendant was armed with a weapon.

## DISCUSSION

The People contend the sentence must be vacated and the matter remanded for further proceedings because the trial court abused its discretion pursuant to *Romero* when it granted defendant's request to strike two of his three prior strike convictions. Defendant disagrees. We agree with the People.

---

[4] The People have authority to appeal this issue under section 1238, subdivision (a)(6), (a)(8), and (a)(10) as the lower court did not impose the full punishment as required under the Three Strikes law.

[5] As the facts of the underlying offense are not at issue here, we give only a brief summary of the incident.

### A.    Background

*Defendant's Criminal History*

On December 16, 2015, when defendant was 18 years old, he suffered his first strike when he was convicted of assault with a firearm (§ 245, subd. (a)(1)).  He was sentenced to confinement for a term of two years.

On November 8, 2016, defendant was released on parole.

On September 13, 2017, less than a year after defendant's release on parole, he suffered his second and third strikes when he was convicted of two counts of second degree robbery (§ 211), as well as a section 12022.53, subdivision (b) enhancement (use of a firearm during a serious felony), and a prior serious felony enhancement (§ 667, subd. (a)(1)).[6]  He was sentenced to a term of 27 years in prison.

On January 26, 2023, while still incarcerated, defendant committed the underlying offenses, attacking another inmate with a weapon with his codefendant D.B.

*Defendant's Prison Violations*

Between 2016 and 2025, defendant was cited by the Department of Corrections and Rehabilitation (CDCR) for 32 conduct violations while incarcerated.

During that period, he received 18 citations for nonviolent conduct rules violations, including being absent from work assignments, refusing to perform assigned duties, possessing a cellular telephone, refusing to work, misusing state property, failing to respond to notices, continuing to refuse to work or participate in work or training, and disobeying an order.

Defendant also received 14 citations for violent conduct rules violations during the period of 2016 to 2025.  Before defendant committed the January 26, 2023 underlying

---

[6]    The trial court noted at sentencing that it was unclear from the record whether defendant's second and third strikes were from separate incidents, stating, "[T]hen he picked up two robberies out of the same case.  And I have no information about whether those are separate incidents or not."

offenses, he was cited three times in 2018 for fighting, once in 2019 for assault on a nonprisoner, twice in 2021 for fighting, and once in 2022 for fighting, and after he committed the underlying offenses, he was cited once for battery on a prisoner and once for battery with a deadly weapon in 2023, four times for battery on a prisoner in 2024, and once for battery on a prisoner in 2025. The 2025 violation occurred after the court gave its indicated sentence on January 31, 2025.

*Indicated Sentence*

On January 31, 2025, at the change of plea hearing, the trial court stated:

> "So in the discussions, no offer from the [prosecution]. [The prosecution] [w]ould accept a counter offer of 12 [years]. [Defense counsel] asked for something less. I think it might have been six. But the court pointed out midterm presumptive is eight.

> "And, [defense counsel], you and [defendant] have decided to plead straight up on both counts. Both counts have to be concurrent. And with a Court indicated midterm four times two for eight, that will require striking the nickel prior and require striking two out of three strikes. And I think that's where we are.

The prosecution opposed the trial court's indicated sentence, stating,

> "… I think it's time for trial, and that there has been plenty of time to settle this case, and every time [defendant] rejected each offer.

> "I want to go to trial and seek a life sentence. And so I am opposing the Court's indicated [sentence]."

After defendant was advised of his rights and waived them, he pled no contest to counts 1 and 2 and admitted the three strikes.

*Trial Court's Ruling*

On July 15, 2025, at the sentencing hearing, the trial court stated it read and considered the prosecution's opposition to defendant's *Romero* motion in which defendant requested two of his three prior strikes be dismissed.

At the hearing, the prosecution argued that the court should decline to strike defendant's prior strikes because of his history of violent conduct, including his violent behavior in prison. He explained the prosecution's earlier offers to settle the case were no longer available because they had already had a preliminary hearing, but that the codefendant had accepted the earlier offer. He stated,

> "[Defendant], who was the one who was armed with a weapon during the offense, rejected all offers until we got to the day of trial, at which time they asked for and counter offered with the original offer from before.

> "I made it clear I was in opposition of that. And I made it clear that I didn't believe that this case qualifies under *Romero* for the striking of a strike. And I would—I would direct the Court to page 5 where it lays out the *Romero* decision and those things which a judge must consider. It also lists out the things in which it believes would be an abuse of discretion if the Court were to *Romero*, strike a strike based on those terms.

> "When you apply that standard to this case and the history of [defendant], it's clear that [defendant] does not qualify under *Romero*. He has been violent since 2018 on a regular basis. The motion contains all of his RVRs[7] for fighting, battery on prisoners, battery on staff, et cetera.

> "As the Court recalls, even after the Court indicated it would consider striking the strike at sentencing, [defendant] thanked the Court by getting involved in another incident in which he and 14 others attacked two others. And that was between the day of the plea and the day of the sentencing.

> "[Defendant] continues to show disrespect for the system and the Court. He is exactly what *Romero* is designed for. He is continuing to be a violent person, even while confined in prison. And he doesn't—has shown nothing that would even remotely apply under *Romero* as to why he deserves this Court to strike his strike. In fact, any reasons that I can think of that the Court might strike it fall squarely under the abuse of discretion. And I would encourage the Court to allow [defendant] to withdraw his plea and we can then set a trial date." (Italics added.)

---

7       An "RVR" is a rules violation in prison.

Defense counsel stated that the past plea negotiations were inapplicable once the plea was entered.  He argued that the only new information applicable to the *Romero* motion was the one new RVR, in which he was part of a group of 15 people who attacked two people, arguing there was only hearsay as to the extent of defendant's participation in that attack and asked the court to follow its indicated sentence and grant the *Romero* motion.

The prosecution stated that it did not believe the trial court was aware of defendant's RVR history, which it included in its sentencing brief and opposition to the *Romero* motion.

The following colloquy occurred:

"THE COURT:           Just looking at the Complaint to try to refresh my recollection on the [codefendant, D.B.].

"I note in circumstances in aggravation it was alleged that [D.B.] was involved in a crime of great violence, great bodily harm.  The victim was particularly vulnerable.  That [D.B.] had engaged in violent conduct.  And indicate he was a danger to society and that his convictions were numerous and increasing seriousness.  It looks like [D.B.] had a prior strike for robbery and another prior strike for robbery.

"So I'm assuming that [defendant's] looking at 25 to life because of Count 1.

"[PROSECUTION]:      Yes, Your Honor.

"And [codefendant] is in a unique position, different than [defendant] is.  The Court may recall on one of our court appearances, it might have been a pre-pre, [codefendant] was seated on the bench, [defendant] walked in and punched him in the face on video in the fish bowl.

"THE COURT:           Did not recall that.

"[PROSECUTION]:      Yes.

"And [codefendant D.B.] also was not armed with a weapon at the time of the [underlying] offense.  He was helping corral … the victim in

7.

this case for the benefit of [defendant] so that [defendant] could continue to stab the victim. He did receive stab wounds directly from the hands of [defendant].

"And the third thing I would point out—or did I already—that [codefendant D.B.]—he took an early plea. He accepted responsibility early. All distinguish [D.B.]'s involvement versus [defendant]'s involvement. And that is part of what goes into this decision.

"THE COURT:                    All right. I would note that I understand the People's policy, that once an offer has been made and rejected, the future offers will be higher. I certainly understand that policy.

"And while I in theory support that policy, at the same time I think that this Court needs to do at any stage of the proceedings, including a sentencing post trial, I should be making an independent decision on what's fair based on the facts of the case, criminal histories, and individualistic review.

"So at some point someone from the prosecution office would have been satisfied with four on [defendant]. You're right. That was rejected and the People would not make that again.

"The next offer by the People was eight. And that was rejected.

"And I believe that final offer on January 12, 2025 was 12 years. And that was also rejected.

"And I understand your arguments, [prosecutor], that perhaps [defendant] is not the best *Romero* candidate, but I did exercise discretion in reviewing the case.

"The only thing new is the new RVR. And we continued, if I'm not mistaken, to see if that case was going to be filed.

"Given that the conduct is similar and that the two defendants are in somewhat similarly situations, the fact that [defendant] used the weapon and now has a new strike, he's getting twice the sentence that the [codefendant's] getting, and he's also getting a sentence that is double what the original offer by the [prosecution] was, and was in fact the offer—the second offer I think post-prelim, so my tentative is to stick with my original thoughts and trust myself at the time that I was reviewing the case in greater detail.

8.

"But I'm not unsympathetic to your arguments, [prosecutor]. And I do appreciate them."

"[PROSECUTION]: And, Your Honor, does the Court wish to place on the record the reasons for the *Romero*s for any future court hearings?"

"THE COURT: I think I just did."

Defense counsel then stated he moved to strike two of defendant's three prior strikes pursuant to *Romero*, "[a]nd the primary grounds is the age."

The trial court struck two of defendant's prior strikes and sentenced defendant to eight years (the midterm, doubled pursuant to the Three Strikes law), and imposed and stayed punishment on count 2. It stated, "[I]n this particular case [the attack] was two-on-one. And this was the only defendant that was armed. So [defendant's] conduct is significantly more serious than the co-defendant. And that is reflected in the number of years. It's also—well, it's reflected in a doubling sentence for the number of years."

### B. Law

In 1994, the Three Strikes law was enacted " 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' " (*People v. Strong* (2001) 87 Cal.App.4th 328, 337 (*Strong*), disapproved on other grounds by *People v. Dain* (2025) 18 Cal.5th 246, 265, fn. 5.) "The law consists of two, nearly identical statutory schemes designed to increase the prison terms of repeat felons. The earlier provision, which the Legislature enacted, was codified as section 667, subdivisions (b) through (i). The later provision, which the voters adopted through the initiative process, was codified as section 1170.12." (*Romero*, *supra*, 13 Cal.4th at p. 504; see §§ 667, subds. (b)–(i), 1170.12.) Prior convictions for "serious" or "violent" felonies, as defined by the Three Strikes law, are referred to as "strikes." (*People v. Henderson* (2022) 14 Cal.5th 34, 44.)

"Section 1385, subdivision (a), authorizes a trial court to dismiss an action 'in furtherance of justice' on its own motion." (*Romero*, *supra*, 13 Cal.4th at p. 504.)  In *Romero*, our Supreme Court "explained that the 'power to dismiss an action,' … 'in furtherance of justice' pursuant to … section 1385[, subdivision] (a), 'includes the lesser power to strike … allegations' or vacate findings 'relevant to sentencing, such as the allegation' or finding 'that a defendant has prior felony convictions.' " (*People v. Williams* (1998) 17 Cal.4th 148, 151 (*Williams*).)

When considering whether to dismiss a prior strike conviction under the Three Strikes law, the lower court must determine "whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161; see *Strong*, *supra*, 87 Cal.App.4th at p. 336 [The "spirit" of a law refers to that law's general meaning or purpose].)  "[T]he sentence imposed by the trial court is itself a factor" when deciding a defendant's prospects for committing future crimes because the defendant will have fewer opportunities to commit crimes while incarcerated.  (*People v. Gaston* (1999) 74 Cal.App.4th 310, 315, disapproved on other grounds by *People v. Dain* (2025) 18 Cal.5th 246, 265, fn. 5.)  Also, the extent of a defendant's criminal record is "undeniably relevant" to the factors outlined in *Williams*.  (*People v. Garcia* (1999) 20 Cal.4th 490, 498–499, 501–502.)  "[T]he presence of mitigating evidence is not enough to render the trial court's decision an abuse of discretion." (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170.)

In *People v. Carmony* (2004) 33 Cal.4th 367 (*Carmony*), the California Supreme Court emphasized that the Three Strikes law "not only establishes a sentencing norm, it

carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so."[8] (*Carmony*, at p. 378.) It described the *Williams* guidance as "*stringent* standards that sentencing courts must follow in order to find" a defendant outside the scheme's spirit. (*Carmony*, at p. 377, italics added.) In 2023, it reiterated this in *People v. Salazar*, stating,"[T]he Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428.) A sentencing court "must … be mindful of the sentencing scheme within which it exercises its authority. In deciding to strike a prior, a sentencing court is concluding that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474.)

We review an order on a *Romero* motion for abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 162.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) "Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal

---

**8** However, "no similar requirement [for the trial court to explicitly justify its decision] applies when a court declines to strike a prior [strike conviction]." (*In re Large* (2007) 41 Cal.4th 538, 550.) "In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id*. at p. 378.)

### C.    *Analysis*

Here, the trial court abused its discretion pursuant to *Romero* when it granted defendant's request to strike two of his three prior strikes because it did not explicitly or sufficiently articulate its reasoning.  While the court stated at the sentencing hearing, "I should be making an independent decision on what's fair based on the facts of the case, criminal histories, and individualistic review," the court's statement does not show it considered the proper factors of the nature of defendant's present offense, criminal record, background, character and prospects when it determined the circumstances were so extraordinary that he fell outside the spirit of the Three Strikes law.

When the trial court granted defendant's *Romero* motion, it stated,

> "Given that the conduct is similar and that the two defendants [defendant and codefendant D.B.] are in somewhat similarly situations, the fact that [defendant] used the weapon and now has a new strike, he's getting twice the sentence that the [codefendant's] getting, and he's also getting a sentence that is double what the original offer by the [prosecution] was, and was in fact the offer—the second offer I think post-prelim, so my tentative is to stick with my original thoughts and trust myself at the time that I was reviewing the case in greater detail."

Without any additional information, the trial court's statement shows it failed to adequately discuss its discretion to strike defendant's prior strike pursuant to *Romero*, including its consideration of the required factors of the nature of defendant's present offense, criminal record, background, character and prospects.  Instead, the court statements were limited to a discussion of the codefendant receiving a shorter sentence despite defendant being the only one who used a weapon during the attack, and the prosecution's original, shorter plea offer that defendant rejected.

Because the trial court did not sufficiently articulate the explicit reasoning for striking defendant's prior strike pursuant to *Romero,* this court is left to rely on the other

facts elicited at the July 15, 2025 sentencing hearing: defendant's commission of numerous offenses after his first strike prior offense in 2015, including the second and third strike prior convictions in 2017; the current offense and fourth strike conviction in 2023; that he was cited 14 times between 2018 and 2025 for violent conduct in prison; the serious nature of the instant offense and that he used a deadly weapon during it; and his failure to remain free from criminal activity for any significant period of time since his first prior strike conviction in 2015, even while incarcerated for almost that entire period. The court did not discuss any aspects of defendant's background, character, or prospects or whether the danger he presents to public safety is outweighed by any mitigating factors. Accordingly, the court's statement did not properly balance the factors relevant to its determination that the circumstances are so extraordinary that he falls outside the spirit of the Three Strikes law. In the absence of articulated, explicit reasoning, the court's dismissal of defendant's prior strikes is irrational and arbitrary, sufficient to support an abuse of discretion. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.)

Further, the People contend that the trial court improperly relied on extrinsic factors when it exercised its discretion pursuant to *Romero* by considering "1) the fact that the co-defendant took an early plea deal for four years; and 2) the District Attorney had previously made multiple prior plea offers." We agree. While a court is required to look at the facts and nature of the offense, the sentence of the codefendant and the prior settlement offers from the district attorney's officer are not factors that should have been considered by the trial court when it chose to exercise discretion to find defendant falls outside the spirit of the Three Strikes scheme. (See *Williams*, *supra*, 17 Cal.4th at p. 161.) Here, the court focused on the length of the codefendant's sentence and the prior offers from the prosecution, rather than the nature of his present offense, criminal record, background, character, and prospects.

The People also contend the trial court impermissibly relied on its own sense of fairness when considering defendant's *Romero* motion. Unlike other sentencing laws, the Three Strikes law does not offer a discretionary sentencing choice. (See *Strong*, *supra*, 87 Cal.App.4th at pp. 337–338.)

In *People v. Vasquez* (2021) 72 Cal.App.5th 374, 389, the court explained,

> "[T]he trial court said, '[W]hat I do need to do and what I'm required to do is apply my experience both as an attorney and as a judicial officer in deciding whether or not the court's indicated [sentence] is fair and in the interests of justice.'
>
> "Respectfully, the trial court got it wrong. Of course, courts are generally obligated to impose sentences that are 'fair and in the interests of justice.' But individual judges are also fundamentally (and statutorily) required to impose a sentence within the confines of 'a sentencing structure within which every court must operate.' [Citation.] In this case, the court did not act within the confines of the Three Strikes law. As we have discussed, there are simply no reasons whatsoever why [the defendant] ' " 'should be treated as though he actually fell outside the Three Strikes scheme.' " ' [Citation.] And the trial court was unable to articulate any reasons, even though he had thought long and hard about the case. He just thought 28 years was enough."

In *Williams*, the defendant had two prior strike convictions (for attempted robbery and rape) and was currently charged with driving under the influence. (*Williams*, *supra*, 17 Cal.4th at pp. 152–153.) After the defendant entered a guilty plea, the trial court vacated one of the two strikes and sentenced him as though he had only one prior strike conviction, and the People appealed. (*Id*. at pp. 156–157.) The California Supreme Court concluded the trial court abused its discretion in vacating one of the strikes. (*Id*. at p. 162.) The court explained, "There is little about [the defendant]'s present felony, or his prior serious and/or violent felony convictions, that is favorable to his position. Indeed, there is nothing." (*Id*. at p. 163.) His current felony for driving under the influence followed three other convictions for driving under the influence, and "[t]he record on appeal [wa]s devoid of mitigation" related "to his prior serious and/or violent

14.

felony convictions." (*Ibid*.) Nor did the defendant's background, character, or prospects show he was outside the spirit of the Three Strikes law given that he was unemployed and, in the 13 years since he suffered his prior strike convictions, "he was often in prison or jail; when he was not, he violated parole and, apparently, probation and committed [further misdemeanor and felony] offenses." (*Ibid*.) Under these circumstances, the decision to strike one of the defendant's prior strike convictions "fell outside the bounds of reason under the applicable law and the relevant facts." (*Id*. at p. 164.)

Similarly here, the trial court's statement, in the absence of more information, amounts to an abuse of discretion because it relies on its antipathy for the length of defendant's sentence in comparison to the length of his codefendant's sentence and the length of the prosecution's prior plea offer. The record before us indicates defendant committed his first strike in 2015, and less than a year later while on parole committed two violent felonies, both of which were also strikes, and was returned to prison where he has been since 2017 and where he committed the current offense, and fourth strike. Additionally, during this same time, he committed a multitude of conduct violations, many of which were violent and included him punching his codefendant, D.B., in the face while awaiting his court appearance in this case (after the court gave the parties its indicated sentence). The court's statement, relying only on the prior plea offered by the prosecution and the shorter sentence his codefendant received, does not convince us the court adequately considered or articulated the proper factors when determining whether he falls outside the spirit of the Three Strikes law.

On the record before us, the trial court's decision to grant defendant's *Romero* motion was not sufficiently explicit to show that it relied on the nature of the current offense, criminal history, background, character, and prospects when determining that defendant falls outside the spirit of the Three Strikes law. In the absence of explicit

reasoning, we find that the decision was "irrational or arbitrary" and is not a proper exercise of discretion. (See *Carmony*, *supra*, 33 Cal.4th at pp. 377–378).

## DISPOSITION

The sentence is vacated and the matter remanded for the trial court to reconsider whether two of defendant's three prior strike convictions should be stricken pursuant to *Romero*. If, upon reconsideration of defendant's *Romero* motion, the court does not strike the prior strikes, defendant must be afforded the opportunity to withdraw from his guilty plea. In all other respects, the judgment is affirmed.